UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JAMES ANSLEY, III, )
 )
        Plaintiff, ) Case No. 1:08-cv-713
 )
v. ) Honorable Robert Holmes Bell
 )
COMMISSIONER OF )
SOCIAL SECURITY, )
 ) **REPORT AND RECOMMENDATION**
        Defendant. )
_____)

        This is a social security action brought under 42 U.S.C. § 405(g), seeking review of a final decision of the Commissioner of Social Security finding that plaintiff was not entitled to disability insurance benefits (DIB). On November 2, 2004, plaintiff filed his application for DIB benefits, claiming a June 27, 2001 onset of disability. (A.R. 52-54). Plaintiff's disability insured status expired on December 31, 2005. (A.R. 63). Plaintiff's claim was denied on initial review. (A.R. 36, 42-46). On January 14, 2008, plaintiff received a hearing before an administrative law judge (ALJ) at which he was represented by counsel. (A.R. 531-72). On February 1, 2008, the ALJ issued a decision finding that plaintiff was not disabled. (A.R. 16-25). On July 2, 2008, the Appeals Council denied review (A.R. 5-7), and the ALJ's decision became the Commissioner's final decision.

        On July 29, 2008, plaintiff filed his complaint seeking judicial review of the Commissioner's decision denying his claim for DIB benefits. The two issues raised by plaintiff are as follows:

1. Was their [sic] substantial evidence of the whole record to deny disability benefits?

2. Did the ALJ err in failing to ask hypothetical questions based on the severe impairments found by the ALJ of irritable bowel syndrome, hepatitis C, and affective disorder that assumed the claimant's ability and persistence of pace to be employed 5 days per week 8 hours per day week after week?

(Statement of Errors, Plf. Brief at iv, docket # 10). Upon review, I find that plaintiff's arguments do not provide a basis for disturbing the Commissioner's decision. I recommend that the Commissioner's decision be affirmed.

**Standard of Review**

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within

which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) ("[E]ven if the district court -- had it been in the position of the ALJ -- would have decided the matter differently than the ALJ did, and even if substantial evidence also would have supported a finding other than the one the ALJ made, the district court erred in reversing the ALJ."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004).

## **Discussion**

The ALJ found that plaintiff met the disability insured requirement of the Social Security Act from his alleged onset of disability of June 27, 2001, through December 31, 2005, but not thereafter. (A.R. 18). Plaintiff had not engaged in substantial gainful activity since his alleged onset of disability through his date last insured. (A.R. 18). The ALJ found that plaintiff had the following severe combination of impairments: "irritable bowel syndrome, hepatitis C, and [an] affective disorder." (A.R. 18). Plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. (A.R. 20). The ALJ found that plaintiff retained the following residual functional capacity (RFC):

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant's impairments prevent him from: lifting or carrying over 20

pounds occasionally or more than 10 pounds frequently; using ladders, ropes, or scaffolds; more than occasional stair climbing; working around unprotected heights or dangerous moving machinery. The claimant has the residual functional capacity for a range of light work that: is simple and unskilled in nature; requires remaining on task, but does not involve maintaining intense concentration; requires only minimal contact with co-workers or the general public.

(A.R. 21). The ALJ found that plaintiff's subjective complaints were not fully credible:

> The claimant alleged an inability to work due primarily to gastrointestinal related problems. The claimant reported abdominal pressure, pain, bloating, a sense of incomplete evacuation with most stools, nausea, and alternating diarrhea and constipation. The claimant indicated that his discomfort sometimes had a cramping, pulsating, and grappling sensation. The claimant indicated his symptoms were only partially alleviated with diet modifications, nutritional supplements, enemas, and alternative therapies. The claimant averred periodically dysphoric and anxious mood over his perceived circumstances. According to the claimant, his condition limited his ability to concentrate, remember, or persist on tasks. Gracie Ansley, the claimant's mother, substantially reiterated her son's testimony with respect to his activities and limitations.
>
> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could have been reasonably expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible.
>
> Specifically, no physician imposed a work preclusive limitation on the claimant's functioning. The undersigned notes the results of CT, sonogram, radiographic, serology, and clinical evaluations which do not unveil profound pathology. Imaging studies were negative for mass, adenopathy, free fluid, obstruction, peptic ulcer disease, or any sign of inflammatory bowel disease. Laboratory analyses including inflammatory markers, food allergy panels, and stool samples were unremarkable. The claimant has not been entirely compliant with treatment recommendations and has instituted some modalities viewed as counterproductive. Nevertheless, the claimant simply does not manifest significant problems from a digestive standpoint. Though thin, the claimant is well-nourished, well-developed, and is not cachetic. His weight has been relatively stable. The claimant's clinical presentations were consistently benign. He exhibited no abnormal distention, masses or significant tenderness. His bowel sounds were good. The claimant was diagnosed with hepatitis C a good deal after his insured status lapsed. Even so, the claimant's liver enzymes were within normal limits and he manifests no ascites, esophageal varices, encephalopathy, jaundice, or hepatic complications. The evidence does not substantiate the claimant's professed level of symptomatology, including his reported fatigue and discomfort, and alleged need to lie down for extended interval[s] on most days. The claimant averred some history of chest mass, however, objective evaluations in this regard disclosed no meaningful

> anomaly, and certainly none that hamper his functionality. Evaluators observed the claimant to ambulate normally without an assistive device and to retain functional range of motion and well-preserved neurological functions. With respect to his emotional status, the claimant has some history of dysphoric and anxious mood. The evidence does not suggest or establish that the claimant lacks suitable concentration, memory, adaptive, cognitive, or interpersonal skills for vocational involvement that is simple, routine, and somewhat solitary in nature as depicted in the residual functional capacity adopted. The claimant has not been psychiatrically hospitalized and, during the period in question, he did not consistently use psychotropic medications or engage in regular mental health therapies. The claimant stated, and the record demonstrates, that he benefitted from two visits to his local CMH agency. Clinicians commonly described the claimant as alert, fully oriented, friendly, appropriate, and without perceptual disturbances or obvious cognitive deficits. Within testimony or the written record, it was reported that the claimant was able to perform self-care tasks and other activities. The claimant prepared meals, washed laundry and dishes, and mopped and vacuumed floors. In addition, the claimant shoveled snow [and] did basic lawn work . . . . Further, the claimant drove, shopped, took care of personal financial matters, and attended church services. Moreover, the claimant used a computer, researched in the [I]nternet, read, watched television, and listened to music. On some occasions, the claimant sewed, played chess, drew, shot pool, and played shuffleboard (Exhibits 4E, 5E, 8E, 9F, 18F).

(A.R. 22-23). Through his date last insured, plaintiff was unable to perform his past relevant work. (A.R. 24). Plaintiff was 40-years-old as of the date of his alleged onset of disability and 45-years-old as of the date his disability insured status expired. Thus, at all times relevant to his claim, plaintiff was classified as younger individual. (A.R. 24). ALJ found that plaintiff has at least a high school education and is able to communicate in English. (A.R. 24). The ALJ found that the transferability of job skills was not material. (A.R. 24). The ALJ then turned to the testimony of a vocational expert (VE). In response to a hypothetical question regarding a person of plaintiff's age, and with his RFC, education, and work experience, the VE testified that there were approximately 76,300 jobs in Michigan's Lower Peninsula that the hypothetical person would be capable of performing. (A.R. 568-69). The ALJ held that this constituted a significant number of jobs. Using Rule 202.21 of the Medical-Vocational Guidelines as a framework, the ALJ found that plaintiff was not disabled. (A.R. 16-25).

**1.**

Plaintiff invites the court to commit error by considering evidence that was not before the ALJ in determining whether the ALJ's decision is supported by substantial evidence. (Plf. Brief at 15-17, 37-38). For more than fifteen years it has been the clearly established law of the Sixth Circuit that the ALJ's decision is the final decision subject to review by this court in cases where the Appeals Council denies review. This court must base its review of the ALJ's decision upon the administrative record presented to the ALJ. The Sixth Circuit has repeatedly held that where, as here, the Appeals Council denies review and the ALJ's decision becomes the Commissioner's decision, the court's review is limited to the evidence presented to the ALJ. *See Jones v. Commissioner*, 336 F.3d at 478; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). The court is not authorized to consider additions to the record in determining whether the Commissioner's decision is supported by substantial evidence and whether the Commissioner correctly applied the law. *See Cline v. Commissioner*, 96 F.3d 146, 148 (6th Cir. 1996).

The last sentence of plaintiff's brief contains a passing request for alternative relief in the form of "remand for a new trial." (Plf. Brief at 39). "A district court's authority to remand a case for further administrative proceedings is found in 42 U.S.C. § 405(g)." *Hollon v. Commissioner*, 447 F.3d 477, 482-83 (6th Cir. 2006). The statute permits only two types of remand: a sentence four (post-judgment) remand made in connection with a judgment affirming, modifying, or reversing the Commissioner's decision; and a sentence six (pre-judgment) remand where the court makes no substantive ruling as to the correctness of the Commissioner's decision. *Hollon*, 447 F.3d

at 486 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 99-100 (1991)); *see Allen v. Commissioner*, 561 F.3d 646, 653-54 (6th Cir. 2009). The court cannot consider evidence that was not submitted to the ALJ in the sentence four context. It only can consider such evidence in determining whether a sentence six remand is appropriate. *See Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007); *Foster v. Halter*, 279 F.3d at 357. Indulgently, plaintiff's request is construed as a request for a sentence six remand.

Plaintiff has the burden under sentence six of 42 U.S.C. § 405(g) of demonstrating that the evidence plaintiff now presents in support of a remand is "new" and "material," and that there is "good cause" for the failure to present this evidence in the prior proceeding. *See Hollon*, 447 F.3d at 483; *see also Longworth v. Commissioner*, 402 F.3d 591, 598 (6th Cir. 2005). Courts "are not free to dispense with these statutory requirements." *Hollon*, 447 F.3d at 486. The May 21, 2008 letter addressed to plaintiff and his attorney (A.R. 522-30) is new because it was generated by Dr. Jerome as a response to the ALJ's February 8, 2008 decision finding that plaintiff was not disabled. *See Hollon*, 447 F.3d at 483-84; *Foster*, 279 F.3d at 357; *see also Templeton v. Commissioner*, 215 F. App'x 458, 463 (6th Cir. 2007).

"Good cause" is not established solely because the new evidence was not generated until after the ALJ's decision. The Sixth Circuit has taken a "harder line." *Oliver v. Secretary of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986); *see also Perkins v. Apfel*, 14 F. App'x 593, 598-99 (6th Cir. 2001). The moving party must explain why the evidence was not obtained earlier and submitted to the ALJ before the ALJ's decision. *See Hollon*, 447 F.3d at 485; *Oliver*, 804 F.2d at 966; *see also Brace v. Commissioner*, 97 F. App'x 589, 592 (6th Cir. 2004) (claimant's decision to wait and schedule tests just before the hearing before the ALJ did not establish good

cause); *Cranfield v. Commissioner*, 79 F. App'x 852, 859 (6th Cir. 2003). Plaintiff has not addressed, much less carried his burden of demonstrating good cause.

Finally, in order to establish materiality, plaintiff must show that the introduction of the evidence would have reasonably persuaded the Commissioner to reach a different conclusion. *See Foster v. Halter*, 279 F.3d at 357; *Sizemore v. Secretary of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988); *see also Hensley v. Commissioner*, 214 F. App'x 547, 550 (6th Cir. 2007). Upon review, I find that the proffered Dr. Jerome's May 21, 2008 letter and attached curriculum vitae are not "material." These documents do not reflect the results of any objective tests regarding plaintiff's condition on or before the expiration of plaintiff's disability insured status on December 31, 2005. Dr. Jerome's opinions that the plaintiff is disabled and that the ALJ should have found that plaintiff met the requirements of a listed impairment are not entitled to any particular weight, because those issues are reserved to the Commissioner. 20 C.F.R. § 404.1527(e).

Plaintiff has not demonstrated that remand pursuant to sentence six of 42 U.S.C. § 405(g) is warranted. I recommend that plaintiff's request for a sentence six remand be denied. Plaintiff's arguments will be evaluated on the record presented to the ALJ.

**2.**

Plaintiff argues that the ALJ's decision is not supported by substantial evidence. Specifically, he argues that the ALJ did not provide an adequate explanation of her credibility determination regarding his subjective complaints. (Plf. Brief at 36-37, docket # 10) (citing *Rogers v. Commissioner*, 486 F.3d 234 (6th Cir. 2007)).

This court does not make its own credibility determinations. *See Walters v. Commissioner*, 127 F.3d at 528; *see also Lawson v. Commissioner*, 192 F. App'x 521, 528 (6th Cir. 2006). The court cannot substitute its own credibility determination for the ALJ's. The court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed . . . ." *Kuhn v. Commissioner*, 124 F. App'x 943, 945 (6th Cir. 2005). The Commissioner's determination regarding the credibility of a claimant's subjective complaints is reviewed under the deferential "substantial evidence" standard. "Claimants challenging the ALJ's credibility determination face an uphill battle." *Daniels v. Commissioner*, 152 F. App'x 485, 488 (6th Cir. 2005). "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones*, 336 F.3d at 476; *see Cruse v. Commissioner*, 502 F.3d 532, 542 (6th Cir. 2007); *see also Gaskin v. Commissioner*, 280 F. App'x 472, 476 (6th Cir. 2008). "The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge [his] subjective complaints." *Buxton v. Halter*, 246 F.3d at 773. "Since the ALJ has the opportunity to observe the demeanor of the witness, his conclusions with respect to credibility should not be discarded lightly and should be accorded deference." *Casey v. Secretary of Health & Human Servs.*, 987 F.2d at 1234.

In *Rogers v. Commissioner*, the United States Court of Appeals for the Sixth Circuit reiterated that, "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." 486 F.3d at 247. The ALJ's credibility determination

must find support in the administrative record and must be sufficiently specific to permit meaningful appellate review:

> [T]he ALJ is not free to make credibility determinations based solely upon an "intangible or intuitive notion about an individual's credibility." Soc. Sec. Rul. 96-7p, 1996 WL 374186, at * 4. Rather, such determinations must find support in the record. Whenever a claimant's complaints regarding symptoms, or their intensity and persistence, are not supported by objective medical evidence, the ALJ must make a determination of the credibility of the claimant in connection with his or her complaints "based on a consideration of the entire case record." The entire case record includes any medical signs and lab findings, the claimant's own complaints of symptoms, any information provided by the treating physicians and others, as well as any other relevant evidence contained in the record. Consistency of the various pieces of information contained in the record should be scrutinized. Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant, while inconsistency, although not necessarily defeating, should have the opposite effect.
>
> Social Security Ruling 96-7p also requires the ALJ explain his credibility determinations in his decision such that it "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." In other words, blanket assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence.

*Rogers v. Commissioner*, 486 F.3d at 247-48 (footnote omitted). The Sixth Circuit explained, "The requirement that the Commissioner fully explain his determinations of the claimant's credibility is grounded, at least in part, upon the need for clarity in later proceedings." *Rogers v. Commissioner*, 486 F.3d at 248 n.5. "In the absence of an explicit and reasoned rejection of an entire line of evidence, the remaining evidence is 'substantial' only when considered in isolation. It is more than merely 'helpful' for the ALJ to articulate reasons ... for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review." *Rogers v. Commissioner*, 486 F.3d at 248 n.5 (quoting *Hurst v. Secretary of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir.1985)).

The ALJ's credibility determination, previously quoted at length herein, is supported by more than substantial evidence in the administrative record. Further, the ALJ gave a very detailed explanation in her opinion why she found that plaintiff's subjective complaints regarding the intensity, persistence, and limiting effects of his symptoms were not entirely credible. (A.R. 23). As recognized by the Sixth Circuit, inconsistencies between a claimant's assertions and the medical and other evidence of record legitimately undermine the claimant's credibility. That is precisely the situation here. I find no error.

### 3.

Plaintiff argues that the ALJ's hypothetical question to the vocational expert was inadequate because it "left out restrictions in regard to h[is] irritable bowel syndrome, hepatitis C, and affective disorder." (Plf. Brief at 39). It is well established that the ALJ's hypothetical question is not required to list the plaintiff's medical conditions. *See Webb v. Commissioner*, 368 F.3d 629, 633 (6th Cir. 2004). Further, the ALJ's hypothetical need only incorporate those limitations which the ALJ has accepted as credible. *See Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *see also Anthony v. Astrue*, 266 F. App'x 451, 461 (6th Cir. 2008); *Infantado v. Astrue*, 263 F. App'x 469, 476-77 (6th Cir. 2008). The ALJ found that plaintiff's subjective complaints were not fully credible. There was no error in the ALJ's hypothetical question and the VE's testimony in response provided more than substantial evidence supporting the ALJ's finding that plaintiff was not disabled.

**4.**

Plaintiff argues that the ALJ failed to give adequate weight to the "opinion" of a treating psychologist, John A. Jerome, Ph.D. (Plf. Brief at 37-38). He does not specify which opinion expressed by Dr. Jerome purportedly failed to receive adequate weight.

Plaintiff claimed a June 27, 2001 onset of disability. He has never required psychiatric hospitalization. The ALJ carefully summarized what little evidence there was regarding mental health care that plaintiff required during the period at issue from plaintiff's alleged onset of disability on June 27, 2001, through his date last disability insured, December 31, 2005:

> The Administration referred the claimant for a February 2005 evaluation with S. Geiger, Ph.D. At that time, claimant denied using psychotropic medications or involvement in mental health treatment, aside from distant substance abuse care. The claimant appeared mildly depressed and was somewhat tangential in responses to questions. The claimant was in good contact with reality and he interacted in a friendly and pleasant manner. The claimant's gait, posture, and motor activity were normal. His grooming and hygiene were fair and his clothing was clean. The claimant was fully oriented. He completed simple calculations accurately and his recent memory was intact. Diagnostic impression was major depression, single episode[,] mild. A global assessment of functioning score of 58 was ascribed to his overall condition. Such a rating, as defined in DSM IV, denotes moderate symptomology (Exhibit 7F)[A.R. 196-200].
> 
> * * *
> 
> The claimant displayed a somewhat anxious and dysphoric mood during an August 2005 presentation at his local Community Mental Health (CMH) Agency. The claimant's affect was congruent. He demonstrated normal thought content, proper orientation, intact concentration, and attention. The claimant's insight and judgment were preserved and his general appearance, behavior, and motor activity were all unremarkable. The claimant was diagnosed with an adjustment disorder (Exhibit 19F)[A.R. 473-76].
> 
> * * *
> 
> The claimant returned to CMH during May 2006. At that time, the claimant reported improvement in his mood and no need for ongoing treatment (Exhibit 19F p.6)[A.R. 477].

(A.R. 19-20). The ALJ noted that Dr. Jerome did not begin treating plaintiff until July of 2005, shortly before plaintiff's disability insured status expired. She found that Dr. Jerome's opinion that plaintiff met the requirements of a series of listed impairments was entitled to little weight:

> The claimant does not satisfy the criteria mandated in sections 5.05, 5.08, 12.04, 12.07, 12.08, or any other listed impairment. This despite the views of J. Jerome, Ph.D. After obtaining counsel for his Social Security claim, the claimant was referred for a July 2005 evaluation with Dr. Jerome. Dr. Jerome completed various assessments indicating that claimant sustained marked restrictions in daily living, marked difficulties in maintaining social functioning, and marked difficulties in concentration, persistence, or pace. Though not identifying such, the doctor also found that the claimant had three episodes of decompensation of extended duration. Dr. Jerome suggested that the claimant met or equaled various listings, a conclusion this clinician has a penchant for reaching. Dr. Jerome provided reports consisting largely of general comments about the goals of support group sessions and little in the way of direct reference to individuals (Exhibits 10F, 11F, 16F, 19F, 20F)[A.R. 243-59, 418-35, 472-501]. Dr. Jerome's view[s] are accorded minimal weight because they are not well supported objectively and are inconsistent with other substantial evidence in the record, including reports from the claimant's CMH agency.

(A.R. 20-21).

The issue of whether the claimant is disabled within the meaning of the Social Security Act is reserved to the Commissioner. 20 C.F.R. § 404.1527(e); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004); *see also Deaton v. Commissioner*, 315 F. App'x 595, 598 (6th Cir. 2009). Dr. Jerome's opinions that plaintiff was disabled or that he met the requirements of various listed impairments were not entitled to any particular weight. *Warner*, 375 F.3d at 390; *see also Zaph v. Commissioner*, No. 97-3496, 1998 WL 252764, at * 2 (6th Cir. May 11, 1998) ("[T]he issue of whether an individual's impairment is equivalent to a listed impairment is an administrative finding, not a medical one."). "Generally, the opinions of treating physicians are given substantial, if not controlling deference." *Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004). A treating physician's opinion is not entitled to controlling weight where it is not

"well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *see Cox v. Commissioner*, 295 F. App'x 27, 35 (6th Cir. 2008) ("This court generally defers to an ALJ's decision to give more weight to the opinion of one physician than another, where, as here, the ALJ's opinion is supported by evidence that the rejected opinion is inconsistent with the other medical evidence in the record."). The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton*, 246 F.3d at 773; *see Kidd v. Commissioner*, 283 F. App'x 336, 340 (6th Cir. 2008). The credibility of the plaintiff's subjective complaints is an issue reserved to the Commissioner, and a treating physician's opinion regarding the credibility of his patient's subjective complaints is not entitled to any particular weight. *See Allen v. Commissioner*, 561 F.3d 646, 652 (6th Cir. 2009). An opinion that is based on the claimant's reporting of her symptoms is not entitled to controlling weight. *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Mitchell v. Commissioner*, No. 08-6244, 2009 WL 1531879, at * 6 (6th Cir. June 2, 2009); *Smith v. Commissioner*, 482 F.3d 873, 876-77 (6th Cir. 2007).

Even when a treating source's medical opinion is not given controlling weight because it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with other substantial evidence in the record, the opinion should not necessarily be completely rejected; the weight to be given to the opinion is determined by a set of factors, including treatment relationship, supportability, consistency, specialization, and other factors. *See Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*, SSR 96-2p (reprinted at 1996 WL 374188 (SSA July 2, 1996)); 20 C.F.R. § 404.1527(d); *Martin*

v. *Commissioner*, 170 F. App'x 369, 372 (6th Cir. 2006); *see also Anthony v. Astrue*, 266 F. App'x 451, 458-59 (6th Cir. 2008).

The Sixth Circuit has held that claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Commissioner*, 482 F.3d 873, 875-76 (6th Cir. 2007); *see Allen v. Commissioner*, 561 F.3d 646, 651 (6th Cir. 2009); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). "The procedural requirement exists, in part, for claimants to understand why the administrative bureaucracy deem them not disabled when physicians are telling them that they are." *Smith*, 482 F.3d at 876.

The administrative record shows that Dr. Jerome first saw plaintiff on July 5, 2005. (A.R. 243, 465). On that date, Dr. Jerome recorded the history that plaintiff supplied. The only test administered by Dr. Jerome was July 16, 2005 Minnesota Multiphasic Personality Inventory (MMPI). (A.R. 245, 467). The few treatment records Dr. Jerome provided for the period at issue (A.R. 446-50) reveal that he never recommended that plaintiff be hospitalized. There is no record of any treatment in August 2005. On September 8, 2005, Dr. Jerome offered an opinion that plaintiff was disabled. (A.R. 449-50). He completed a psychiatric review technique form stating that plaintiff met the requirements of listings 12.07 and 12.08 and equaled the requirements of listing 12.04. (A.R. 246, 451). He asserted that plaintiff suffered from "marked" restrictions in activities of daily living, difficulties in maintaining social functioning, and difficulties in maintaining concentration, persistence or pace. (A.R. 256, 461). He stated that plaintiff had experienced three episodes of decompensation, each of extended duration. (A.R. 256, 461). On October 13, 2005, Dr. Jerome wrote, "He has sharpened up his habits and routines, eating only healthy foods and staying

away from exotic herbs and is now getting a decrease in his gastrointestinal symptoms. He is reading some more appropriate self-help books rather than the more radical books and I believe he is going to move on to more optimal symptom management." (A.R. 448). Dr. Jerome's November and December 2005 notes describe support group meetings and do not even mention plaintiff by name. (A.R. 446-47). Likewise, the Dr. Jerome's notes dated after December 31, 2005 describe his conduct of support group sessions rather than any individualized assessment of plaintiff's condition. (A.R. 436-45, 479-82). On August 29, 2007, Dr. Jerome filled out some additional forms, but he left blank the portions indicating whether he was making an assessment of plaintiff's condition as of August 29, 2007, as of plaintiff's date last disability insured in 2005, or some other date. (A.R. 418). He opined that plaintiff met listings 12.06 and 12.07. (A.R. 422, 427). He indicated that plaintiff had a "marked" limitation in maintaining social functioning and activities of daily living and had "moderate" restrictions in maintaining concentration, persistence or pace. (A.R. 432, 497). He repeated his statement that plaintiff had experienced three episodes of decompensation of extended duration. (A.R. 432, 497).

I find no violation of the treating physician rule. Dr. Jerome had treated plaintiff for a very short time before first opining that he was disabled. During that brief period, he administered only one test and recommended no substantive treatment. His evaluation of plaintiff as having "marked restrictions" in three major areas would naturally call for significant intervention, even hospitalization, but Jerome did not refer plaintiff for any such care. The ALJ was rightly dismissive of his opinion. The ALJ's decision is supported by more than substantial evidence and the ALJ complied with the procedural requirement of providing "good reasons" for the weight she gave to Dr. Jerome's opinions.

**Recommended Disposition**

For the reasons set forth herein, I recommend that the Commissioner's decision be affirmed and that plaintiff's request for remand to the agency be denied.


Dated: September 2, 2009          /s/ Joseph G. Scoville
                                  United States Magistrate Judge


**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *McClanahan v. Commissioner*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).